UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLIVIA MORA,<br>Plaintiff,<br>v.<br>CITY OF SEATTLE et al.,<br>Defendants. | CASE NO. 2:24-cv-01084-TL<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on Defendant City of Seattle's Motion for Summary Judgment.[1] Dkt. No. 34. Having reviewed Defendant's motion, Plaintiff Olivia Mora's response (Dkt. No. 36), Defendant's reply (Dkt. No. 37), and the relevant record, the Court GRANTS Defendant's motion.

[1] Defendant City of Seattle is represented by counsel in this matter. *See* Dkt. No. 14 (Notice of Appearance). Defendant Office of Immigrant and Refugee Affairs ("OIRA") and Defendant Scholar Fund have not appeared in this matter. The Court addresses the dismissal of the claims related to Defendants OIRA and Scholar Fund in Sections III.D. and III.E, respectively.

# I. Background

For clarity, the Court begins by introducing the various Parties and important organizations in this case, which include the following: Defendant City of Seattle ("City"), Defendant Office of Immigrant and Refugee Affairs ("OIRA"), Defendant Scholar Fund, the Seattle Relief Fund ("SRF"), and the Seattle Office for Civil Rights ("SOCR").

## A. Background of the Parties and the Seattle Relief Fund

Plaintiff is an individual who applied for COVID-19 financial relief from Defendant City in November 2021. Dkt. No. 7 (Complaint) ¶ 46. Plaintiff has a "cognitive disability . . . due to a long-term brain injury," which "results in her having short-term and long-term memory deficiency[.]" *Id*. ¶¶ 16–17. During the time period relevant to this case, Plaintiff also wore a cast on her right hand due to a recent surgery, which interfered with her ability to complete a financial-relief application without assistance. *See id*. ¶ 18; Dkt. No. 34 at 8.

The Seattle Relief Fund "was created by [Defendant] City to assist Seattle's low-income households that experienced the economic impacts caused by the COVID-19 crisis and those disproportionately impacted by the COVID-19 public health crisis." Dkt. No. 34 at 1. Defendant OIRA is an office within the City of Seattle. *Id*. at 2–3. Defendant OIRA and the City of Seattle's Human Services Department ("HSD") were assigned with setting up the SRF and distributing $14 million in cash assistance to Seattle's most vulnerable low-income residents. *Id*. at 2–3. Defendant Scholar Fund "was the entity that was administering the SRF under federal, state, and local law." *Id*. at 1–2. Defendant City contracted with Defendant Scholar Fund, a nonprofit, "as its operational partner for the 2021 Seattle Relief Fund." *Id*. at 3. Defendant Scholar Fund "administered certain operational and technical portions of the relief process, including application intake and randomization/awards selection, but was **not** responsible for all application-assistance work." Dkt. No. 35 (Phillips Decl.) at 41 (Scholar Fund Case Summary).

Defendant Scholar Fund operated a phone help line where applicants could call or text for inquiries about the SRF. Dkt. No. 35 at 9 (Seattle Relief Fund Website). Applications were open from October 25, 2021, to November 15, 2021. *Id*. at 4.

In order to help facilitate the application process, Defendant OIRA and HSD contracted with 45 nonprofit organizations who acted as outreach partners, 23 of which were designated to assist applicants with disabilities who needed an accommodation. Dkt. No. 34 at 3; Dkt. No. 35 at 6–7 (listing organizations). Plaintiff submitted her application with the assistance of one of these partners—Gay City: Seattle's LGBTQ Center. Dkt. No. 7 ¶ 46; Dkt. No. 35 at 54 (administrative findings of fact and determination). The funds were not distributed on a first-come, first-served basis and instead were scored based on multiple criteria based on self-attested responses from applicants. Dkt. No. 35 at 41–42. The higher the applicant scored, the higher the priority they received, with a maximum score of nine points per applicant. *Id*. Plaintiff scored at a 3. *Id*. After applicants with higher scores were awarded funds, there were 7,602 3-point applicants remaining, but only 776 awards. *Id*. A random lottery was used to determine which of the remaining applicants would receive the remaining awards; Plaintiff was not among those selected for an award. *Id*.

### B. Procedural Background

On March 21, 2022, Plaintiff filed a charge with the Seattle Office for Civil Rights ("SOCR") against Defendant OIRA. *See* Dkt. No. 35 at 48 (SOCR Findings of Fact and Determination). On May 9, 2022, SOCR issued its findings of fact and determination, concluding that there was no reasonable cause to believe that Plaintiff had been discriminated against. *Id*. at 62. Plaintiff did not appeal the SOCR decision. *Id*. at 2 ¶ 8. Over two years later,

on August 13, 2024,[2] Plaintiff filed a civil action in district court against Defendants City of Seattle, OIRA, and the Scholar Fund. Dkt. No. 7 at 1.

In the complaint, Plaintiff brings six total claims which are as follows: (1) Disability Discrimination against all Defendants under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, the Washington Law Against Discrimination ("WLAD"), RCW 49.60.040, and Seattle's Public Accommodations Ordinance, Seattle Municipal Code (SMC) 14.06 (Dkt. No. 7 ¶¶ 72–85); (2) Disability Discrimination (Failure to Accommodate) against all Defendants under Title II of the ADA; WLAD, and Seattle's Public Accommodations Ordinance, (*id.* ¶¶ 86–99); (3) Disability Discrimination against Defendant Scholar Fund under Title III of the ADA, WLAD, RCW 49.60.040, and Seattle's Public Accommodations Ordinance (*id.* ¶¶ 100–113); (4) Disability Discrimination (Failure to Accommodate) against Defendant Scholar Fund under Title III of the ADA, WLAD, RCW 49.60.040, and Seattle's Public Accommodations Ordinance (*id.* ¶¶ 114–127); (5) Negligent Infliction of Emotional Distress ("NIED") against all Defendants (*id.* ¶¶ 128–139); and (6) Intentional Infliction of Emotional Distress ("IIED") against all Defendants (*id.* ¶¶ 140–151).

On June 4, 2026, Defendant City filed the instant motion. The matter is fully briefed and is ripe for the Court's review.

## II. Legal Standard

### A. Summary Judgment Legal Standard

The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

[2] Plaintiff submitted her Complaint on July 23, 2024 (Dkt. No. 1-1), but it was not formally filed into the court record until August 13, 2024, when Plaintiff's application to proceed in forma pauperis was granted. *See* Dkt. Nos. 6, 7.

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment must carry its burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in the record. Fed. R. Civ. P. 56(c)(1) (explaining the ways in which a "party asserting that a fact cannot be or is genuinely disputed must support the assertion"). Unless the burden of production is met, "the nonmoving party has no obligation to produce anything" to support its claims or defenses. *Nissan Fire*, 210 F.3d at 1103–04.

Courts do not make credibility determinations or weigh the evidence at this stage. *See Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual issues in favor of a non-moving party, but "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific affidavits are insufficient, and "missing facts" are not to be presumed. *Id.* at 889. Further, uncorroborated and self-serving testimony does not create a genuine issue of fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

**B. 28 U.S.C. § 1915 Legal Standard**

The Court's authority to grant IFP status derives from 28 U.S.C. § 1915. Per the statute, the Court must dismiss a case at any time if an IFP Plaintiff fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners."). "The legal standard for dismissing a complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as when ruling on dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Day v. Florida*, 2014 WL 1412302, at *4 (W.D. Wash. Apr. 10, 2014) (citing *Lopez*, 203 F.3d at 1129). Rule 12(b)(6) requires courts to assume the truth of factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

## III. Discussion

**A. Plaintiff's Claims Under the Seattle Municipal Code Are Time-Barred**

Plaintiff brings Counts 1–4, in part, under Seattle Municipal Code 14.06. Dkt. No. 7 ¶¶ 72–127. The Seattle Municipal Code states, "[a]ny charging party or aggrieved person may commence a civil action in King County Superior Court or any other court of competent jurisdiction not later than two (2) years after the occurrence or termination of an alleged unfair practice, whichever occurs last[.]" SMC 14.06.040(A). Additionally, it states,

> [t]he computation of such two-year period shall not include any time during which an administrative proceeding under this chapter was pending with respect to a complaint or charge under this chapter alleging an unfair practice based on the same facts or occurrences. For purposes of this subsection, an "administrative proceeding" begins with the filing of a charge with the Department and ends with the completion of an appeal filed with the Commission or a final order issued by the Director, whichever occurs last.

SMC 14.06.040(B).

In the instant matter, Defendant City asserts, and Plaintiff does not contest, that Plaintiff did not appeal the final order of the SOCR. Dkt. No. 34 at 5. Therefore, this matter became administratively final on May 9, 2022, the date of the final order. *See* Dkt. No. 35 at 63. Plaintiff did not formally file the present claim until August 13, 2024. Dkt. No. 7. Even if the Court starts the clock at the conclusion of the SOCR review (and does not discount any time between when the alleged discrimination occurred and when Plaintiff filed her charge with SOCR), Plaintiff still filed her lawsuit more than two years after that date of the final SOCR order. Therefore, the Court DISMISSES Counts 1–4 brought by Plaintiff under the Seattle Municipal Code as time-barred.

**B. Count 1: Disability Discrimination Against All Defendants**

In Count 1, in addition to her untimely claims under the Seattle Municipal Code, Plaintiff asserts she was discriminated against because of her disability in violation of Title II of the ADA and the WLAD.

**1. ADA Title II Claims**

To establish a violation of Title II of the ADA, a plaintiff must show: "(1) [s]he is a qualified individual with a disability; (2) [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of h[er] disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. With respect to an individual, "disability" means, in relevant part, "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42

U.S.C. § 12102(1)(A). The ADA defines a "public entity," in relevant part, as: "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1). A "qualified individual with a disability" is defined as: "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

**a. Plaintiff is a Qualified Individual with a Disability**

Defendant City accepts as true that Plaintiff "suffers from a cognitive disability due to a long-term brain injury . . . [and] had surgery on her right hand, which was in a cast during the relevant time period, and she could not write or complete the application without assistance." Dkt. No. 34 at 8. Therefore, there is no dispute that Plaintiff is an individual with a disability.

**b. Plaintiff Did Not Face Exclusion, Denial, or Discrimination**

Plaintiff claims, "Defendants, and all of them, discriminated against Plaintiff by denying [Plaintiff] full enjoyment of Defendant OIRA Seattle Relief Fund services by failing to accommodate her disability." Dkt. No. 7 ¶ 29. The evidentiary record before the Court, however, demonstrates otherwise.

It appears from Plaintiff's deposition that the accommodation she was requesting was to speak to someone on the phone to fill out the application. Dkt. No. 35 at 25:13–14 (Plaintiff Deposition) ("I just wanted to talk to somebody to help me fill out this application. That's all it was."). However, nowhere in Plaintiff's complaint, nor her response brief, does Plaintiff assert that she ever requested a telephone accommodation. And Plaintiff conceded in her deposition that nothing required Defendants to call her the first time in response to her inquiry. *Id.* at 23:15–17.

In addition, she admitted that when Defendants asked how they could help her, she did not tell them how they could do so:

> Q. And when [Defendant SRF] say[s], "How can I help you?" you choose [*sic*] not to provide the information on how they can help you?
>
> A. Yeah. Exactly.

Dkt. No. 35 at 24:13–16. Plaintiff made this same admission on at least four other occasions during her deposition:

> Q. Did you tell them that? Did you tell them, "I need to talk to someone?"
>
> A. No, I didn't. No.

*Id*. at 25:15–17.

> Q. [W]hen they . . . said, "How can we help you?" did you say, "Please call me"?
>
> A. No.

*Id*. at 26:12–16.

> Q. Did you tell them what you needed for them to assist you with your disability?
>
> A. No.

*Id*. at 27:6–8.

> Q. Did you tell them what your reasonable accommodation was?
>
> A. No.

*Id*. at 28:22–24. Plaintiff further admitted that she did not have any basis to believe she was treated differently. *See id*. at 29:15–19.

In response, Plaintiff does not dispute her deposition answers, nor does she provide any evidence herself. *See generally* Dkt. No. 36. Further, Plaintiff states in her Complaint that she texted the phone line for the Seattle Relief Fund to request help. Dkt. No. 7 ¶ 35. While Defendant Scholar Fund's representatives were typically slow to respond to Plaintiff due to a very high volume of calls and texts from the public (*see* Dkt. No. 35 at 55–56), they provided Plaintiff the application website link on several occasions and asked how they could help Plaintiff several times (*see id*. at 55–57). In fact, evidence provided by Defendant City shows that the last correspondence Plaintiff had with a representative of Defendant Scholar Fund included the representative saying, "Hello, this is an admin for the SRF program. We are sorry that our agents could not get to you in time. How can I assist you with the application?" *Id*. at 57. Plaintiff did not respond, and the representative sent another text that said, "We hope that we can help you in the future! Once again, we are sorry for the long wait time on a response from our agents. We hope you have a wonderful day," to which Plaintiff responded by asking the responder not to text her anymore. *Id*. Finally, Plaintiff states in her complaint that she actually completed an application with the help of Gay City: Seattle's LGBTQ Center (Dkt. No. 7 ¶ 46)—one of the nonprofits that contracted with Defendant City to help individuals with disabilities who needed an accommodation with the application process (Dkt. No. 35 at 6–7).

Defendant City has carried its burden of producing evidence negating an essential element of Plaintiff's claim, and Plaintiff has provided no evidence in response. Therefore, the Court finds that Plaintiff was not excluded from participation in the application process, denied benefits of Defendants' application programs, or discriminated against by Defendant City.

//

//

//

**c. Plaintiff Faced No Exclusion, Denial, or Discrimination Because of Her Disability**

Because Defendant City has provided evidence negating Plaintiff's claims that she faced exclusion, denial, or discrimination, there is no showing that Plaintiff faced exclusion, denial, or discrimination because of her disability.

* * *

Defendant City has produced evidence negating the essential elements of Plaintiff's Title II ADA claims Accordingly, this makes the matter "so one-sided that [Defendants] must prevail as a matter of law." *Anderson*, 47 U.S. at 251. Therefore, the Court GRANTS Defendant City's motion as to Count 1.

**2. Washington Law Against Discrimination**

Plaintiff also brings Counts 1 and 2 under the WLAD. Dkt. No. 7 ¶¶ 72–99. The WLAD prohibits discrimination on the basis of protected class status, including "the presence of any sensory, mental, or physical disability[.]" RCW 49.60.030(1). This right includes "the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement[.]" RCW 49.60.030(1)(b). To make a prima facie case of public accommodation discrimination under the WLAD, a plaintiff must prove that "(1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination." *Floeting v. Grp. Health Coop.*, 192 Wn.2d 848, 853, 434 P.3d 39 (2019); *see also Maddox v. United Network for Organ Sharing*, 787 F. Supp. 3d 1159, 1162 (W.D. Wash. 2025).

For the same reasons previously stated, *see supra* Section III.B.1.b., although Plaintiff is a member of a protected class, she was not discriminated against by Defendants.

Moreover, specific to the WLAD claim, Plaintiff's brief provides no evidence, let alone argument, that she was treated differently than anyone else applying for SRF, or that she was treated differently because of her disabilities. On the flip side, Defendant City provides ample evidence that Plaintiff was treated the same as other applicants, as Plaintiff went through the same application process as others, namely the priority point system and random lottery that other applicants with three points also went through. *See* Dkt. No. 35 at 41–42. As such, Defendant City has produced evidence negating the essential elements of Plaintiff's WLAD claims.

Therefore, the Court GRANTS Defendant City's motion as to Plaintiff's WLAD claims in Count 1 against Defendant City.

**C. Count 2: Disability Discrimination—Failure to Accommodate Against All Defendants**

In Count 2, Plaintiff asserts Defendants failed to accommodate her disability in violation of Title II of the ADA and the WLAD. Plaintiff's claims regarding this Count fail for the same reasons stated in Section III.B.

**D. Review of Counts 1 and 2 Against Defendant OIRA Under 28 U.S.C. § 1915**

Defendant City seeks dismissal of all Plaintiff's claims but does not represent Defendant OIRA or Defendant Scholar Fund. *See* Dkt. No. 14 (Notice of Appearance). Although Defendant OIRA and Defendant Scholar Fund have not appeared in this matter, under 28 U.S.C. § 1915(e)(2), district courts have authority to review IFP complaints and must dismiss them if "at any time" the court determines that a complaint fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Accordingly, the Court will conduct a review of the

claims against Defendant OIRA in the present section, with the same analysis for Counts 3 and 4 against Defendant Scholar Fund in Section III.C.[3]

Plaintiff's complaint fails under Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A plaintiff must provide sufficient factual details in the Complaint to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a plaintiff proceeds pro se, courts must construe the complaint liberally. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011) (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). However, a court "should 'not supply essential elements of the [pro se] claim that were not initially pled.'" *Henderson v. Anderson*, 2019 WL 3996859, at *1 (W.D. Wash. Aug. 23, 2019) (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants.") (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). An IFP complaint that fails to state a claim must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii). To state a plausible claim for relief in federal court, a Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* The Court is mindful that it ordinarily must grant leave to amend when it dismisses a pro se complaint, unless the pleading cannot be cured by amendment. *See,*

---

[3] Although Counts 1 and 2 are brought against "all Defendants," the Court reads Plaintiff's complaint as bringing Counts 1 and 2 against Defendant City of Seattle and Defendant OIRA, while Counts 3 and 4 are against only Defendant Scholar Fund. First, Counts 1 and 2 are brought, in part, under Title II of the ADA (Dkt. No. 7 at 13, 15), which applies to public entities. *See* 42 U.S.C. § 12132. Defendant Scholar Fund is not a public entity, as it is a non-profit that contracted with Defendant City. Dkt. No. 34 at 3. Therefore, a claim could not be brought against Defendant Scholar Fund under Title II of the ADA. Plaintiff appears to realize this distinction, because she brought separate allegations against Defendant Scholar Fund in Counts 3 and 4, under Title III of the ADA. *See id.* at 16, 18.

*e.g.*, *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) (affirming lack of leave to amend where amendment was futile).

In the instant matter, the Court cannot draw a reasonable inference from Plaintiff's complaint that Defendant OIRA is liable under Counts 1 and 2. Although Plaintiff's complaint alleges that she told all defendants that she needed an accommodation (Dkt. No. 7 ¶ 30), and that Defendants were "aware of Plaintiff's disability," (*id.* ¶¶ 103, 117), Plaintiff does not allege that she told any of the Defendants, including Defendant OIRA, what type of accommodation she needed, nor does she provide any information that indicates she was discriminated against because of her disability. Therefore, Plaintiff fails to state a claim against Defendant OIRA that she is entitled to relief under her Title II ADA claims.

The same missing information also means that Plaintiff has failed to show that she is entitled to relief under her WLAD claim. Her claim under WLAD fails for the additional reason that she does not provide facts showing that she was "discriminated against," in that Defendant OIRA "did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class." *See Floeting*, 192 Wn.2d at 853. In fact, Plaintiff even alleges in her complaint that, "other *non-disabled* applicants were denied assistance to fill out and understand the Refugee Fund application" (Dkt. No. 7 ¶ 119 (emphasis added)), indicating that she felt the alleged failure to accommodate impacted both disabled and non-disabled people alike. Without any information about Defendant OIRA's being told of the type of accommodation Plaintiff needed, or any alleged facts that show that Defendant OIRA discriminated against Plaintiff because of her disability, and without any alleged facts indicating that Plaintiff was treated differently than persons without a disability, the Court cannot infer that Defendant OIRA is liable in Counts 1 and 2 under either Title II of the ADA or the WLAD.

As a final matter, for the evidentiary reasons discussed in Sections III.A., III.B.1.b., and III.B.2, any amendment to Plaintiff's complaint would be futile. *See Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) ("[C]ourts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment."). Accordingly, the Court will not allow for Plaintiff to amend her complaint. Therefore, the Court DISMISSES Plaintiff's Counts 1 and 2 as to Defendant OIRA.

**E. Counts 3 and 4: Disability Discrimination and Disability Discrimination—Failure to Accommodate Against Defendant Scholar Fund**

Counts 3 and 4 are Title III claims under the ADA brought only against Defendant Scholar Fund. Dkt. No. 7 ¶¶ 100–127. As stated, Defendant Scholar Fund has not appeared in this matter, but the Court will conduct a review of Plaintiff's IFP complaint as to these claims. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

To establish a violation of Title III of the ADA, a plaintiff must show:

> (1) [s]he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). For the same reasons outlined in Section III.B.1.b. and c., as well as Section III.C., the Court finds that it cannot draw a reasonable inference from Plaintiff's complaint that Defendant Scholar Fund is liable under the ADA or WLAD for the claims brought in Counts 3 and 4. Further, any amendment to Plaintiff's complaint as to these claims would be futile for the same reasons discussed in Sections III.A., III.B.1.b., and III.B.2.

Therefore, the Court DISMISSES Plaintiff's Counts 3 and 4 as to Defendant Scholar Fund.

**F. Counts 5 and 6: Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress**

Plaintiff's claims for emotional distress both rest upon her being ignored and denied a request for accommodation for her disabilities. Dkt. No. 7 ¶¶ 131, 143. As the Court has found no merit to Plaintiff's claims related to her request for accommodations, and for the same reasons stated in the sections analyzing those claims, Plaintiff's claims for emotional distress also fail.

Therefore, the Court DISMISSES Counts 5 and 6.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Defendant City of Seattle's Motion for Summary Judgment (Dkt. No. 34) as to claims 1, 2, 5, and 6 is GRANTED, and the claims against Defendant City of Seattle are DISMISSED.

(2) Plaintiff's claims against Defendant OIRA (i.e., Counts 1, 2, 5, and 6) and Defendant Scholar Fund (i.e., Counts 3, 4, 5, and 6) are DISMISSED for failure to state a claim without leave to amend.

Dated this 19th day of August, 2026.

Tana Lin
United States District Judge